**ZONTELLI BROTHERS, a Corporation, Appellant,**

v.

**NORTHERN PACIFIC RAILWAY COMPANY, Appellee.**

**No. 16063.**

United States Court of Appeals
Eighth Circuit.

Jan. 26, 1959.

Joseph B. Johnson, Duluth, Minn. (Reavill, Jenswold, Neimeyer & Johnson, Duluth, Minn., were with him on the brief), for appellant.

W. S. Lycan, Jr., St. Paul, Minn. (M. L. Countryman, Jr., and Earl F. Requa, St. Paul, Minn., were with him on the brief), for appellee.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The question presented for determination in this proceeding, which may be considered as ancillary to the main action, [1] is focused upon the right of appellee, Northern Pacific, to contribution from appellant, Zontelli, for a portion of the amount paid by Northern Pacific in settlement of a death claim.

One Orton Alfred Ryen, for brevity's sake called Ryen, was an employee of Northern Pacific, who, while working as a member of a train crew on October 18, 1956, died from injuries received in a collision between the caboose on which he was riding and a motor vehicle being operated for and in behalf of Zontelli. Thereafter, Hulda C. Ryen, widow of the deceased, was appointed as special administratrix of his estate, and, pursuant to Title 45 U.S.C.A. § 51 (Federal Employers' Liability Act), instituted an action against Northern Pacific in the District Court, as the personal representative of decedent, for and in behalf of the widow, seeking damages for his death in the sum of $200,000. On motion of Northern Pacific, an order was entered by the court bringing Zontelli into the case as a third-party defendant. Northern Pacific thereupon filed its third-party complaint in which it alleged that the collision between the caboose and Zontelli's truck, and the resulting death of Ryen, were caused by the sole negligence and carelessness of Zontelli, and that in the event Northern Pacific was found to be liable to plaintiff, Zontelli was liable to Northern Pacific for the full amount it was required to pay.

Prior to the time that the main action came on for trial, Northern Pacific and plaintiff therein reached a settlement under which Northern Pacific agreed to pay the sum of $42,500 in full settlement of damages resulting from Ryen's death. Following the settlement agreement, the widow, Hulda C. Ryen, caused herself to be appointed as trustee of the heirs of Ryen, deceased, pursuant to 37 Minn.Stat.Anno. § 573.02, subd. 2, as amended Laws 1951, c. 697, § 1; Laws 1955, c. 407, § 1. (Hereinafter referred to as "Wrongful Death Act.") Thereafter, Northern Pacific paid the sum of $42,500 to Hulda C. Ryen, as special administratrix of the estate of Ryen, deceased, and as trustee, taking a release from her in both capacities, whereby both Northern Pacific and Zontelli were fully and forever discharged and acquitted from all claims growing out of the death of Ryen.

After consummation of the settlement with plaintiff in the main action, Northern Pacific filed its amended complaint against Zontelli, which contained allegations essential to a recovery by way of indemnity or contribution. The style of the action was made to conform to the caption hereof. The case was submitted to the jury under instructions authorizing a verdict against Zontelli for one-half of the amount determined to be a fair, just and provident settlement with the maximum recovery fixed at

1. Hulda C. Ryen, as Special Administratrix of the Estate of Orton Alfred Ryen, decedent, plaintiff, v. Northern Pacific Railway Company, defendant.

2. In Minnesota, allocation of liability in actions for contribution is not based on comparative negligence—rather each tort-feasor is liable for an aliquot share of the loss. See "Contribution and Indemnity Among Tortfeasors in Minnesota," 37 Minn.L.R. 470, 474, and cases cited.

$21,250, or one-half of the amount paid in settlement of the death claim.[2] The jury found for Northern Pacific for $21,250, and judgment was duly entered thereon.[3] A memorandum order, reported at 161 F.Supp. 769, was entered by the trial court, denying Zontelli's subsequent motion for judgment in accordance with its motion for directed verdict, and appeal was duly perfected to this Court.

■ Underlying the primary and basic issue is the question of whether Zontelli and Northern Pacific were joint tort-feasors or joint wrongdoers in the sense that their torts imposed a common liability upon them to respond in damages for the death of Ryen. Succinctly stated, Zontelli argues that common liability was absent; Northern Pacific insists that it was present. The right to contribution, created by statute in some jurisdictions, existing by virtue of the common law in others, lies to force an equitable apportionment of an equal share of the total loss suffered or money necessarily paid by one of the parties subject to a common liability, in behalf of the other party, or all who are subject to such common liability.[4] A review of the law controlling the right of contribution among unintentional tort-feasors, existing under the common-law in Minnesota,[5] discloses that: "(t)he very essence of the action * * is 'common liability.'" American Auto-mobile Ins. Co. v. Molling, 239 Minn. 74, 57 N.W.2d 847, 849; Koenigs v. Travis, 246 Minn. 466, 75 N.W.2d 478, 483. The history of the action for contribution is not only reviewed in American Automobile Ins. Co. v. Molling, supra, but the elements going to make up the doctrine are enumerated. From what is there said, as well as through prior expressions of the Minnesota Supreme Court and other authorities, it may authoritatively be stated that, as between tort-feasors, the right of contribution does not accrue in Minnesota unless they were cotort-feasors or joint wrongdoers in the sense that their tort or torts imposed a *common liability* upon them to the party injured. Concurring negligence alone by the tort-feasors is not enough; if, as a matter of law the concurring negligence of the party from whom contribution is sought gives the injured party no cause of action against him, there is no common liability. Typical of the situations where there was no common legal liability to give rise to contribution are American Automobile Ins. Co. v. Molling, supra, where contribution was sought from the husband of the injured party, and denied because of the common-law rule of marital immunity in effect in Minnesota, and Koenigs v. Travis, supra, in which the injured woman married the driver of the automobile from whom contribution was sought, after the automobile collision which gave rise to the

---

3. The court also submitted special interrogatories, which, with answers thereto, are:

"1. (a) Was John P. Pirner, the driver of defendant's truck negligent?

"Answer: Yes.

"(b) If he was negligent, did such negligence proximately contribute to the cause of the collision?

"Answer: Yes.

"2. (a) Was the brakeman Orton Alfred Ryen negligent?

"Answer: No.

"(b) If he was negligent, did such negligence proximately contribute to the cause of the collision?

"Answer: ......

"3. Was the settlement made by the Northern Pacific Railway Company fair, just and provident?

"Answer: Yes."

4. See American Automobile Ins. Co. v. Molling, 239 Minn. 74, 57 N.W.2d 847, 851, quoting Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 359, 83 N.W. 346, 347; Merrimac Mining Co. v. Gross, 216 Minn. 244, 12 N.W. 2d 506, 509; Koenigs v. Travis, 246 Minn. 466, 75 N.W.2d 478, 483; Employers Mutual Casualty Co. v. Chicago, St. P., M. & O. Ry. Co., 235 Minn. 304, 50 N.W.2d 689, 693; Restatement, Restitution, § 81; 18 C.J.S. Contribution § 4; 13 Am.Jur., Contribution, § 50.

5. See 37 Minnesota Law Review, "Contribution and Indemnity Among Tortfeasors in Minnesota," 470, 471.

main suit. Again, the court held there was no common liability because plaintiff had no right of action against her husband. See also, Fort Worth & Denver Railway Co. v. Threadgill, 5 Cir., 228 F.2d 307 (contributory negligence, a complete bar to recovery from one cotortfeasor, destroyed common liability).

■ Tested by the applicable principles, we are persuaded to hold that there was common liability between appellant and appellee. It of course cannot be disputed that Northern Pacific's liability for Ryen's death, as a common carrier by railroad, was bottomed on and existed because of the Federal Employers' Liability Act, supra, whereas the claim against Zontelli had to be grounded on the Minnesota Wrongful Death Act, supra. It is equally obvious that the F.E.L.A. provides that damages for death of an employee of a common carrier by railroad may be recovered by the *personal representative* of the deceased, while the Minnesota act gives to the *trustee*, appointed in accordance with the provisions thereof, the right to maintain an action for wrongful death. However, while the statutes differ slightly in the designation of the party entitled to prosecute the actions (Personal representative, such as an administrator, under F.E.L.A.; Trustee under Minnesota wrongful death act), as to the matter of real importance, viz.: the beneficiary of the damages recoverable, here concededly, the widow, the statutes are on common ground. Under Title 45 U.S.C.A. § 51, the amount paid to the personal representative is *"for the benefit of the surviving widow or husband and children of such employee;"* etc. Under the Minnesota Act, the recovery *"shall be for the exclusive benefit of the surviving spouse and next of kin,"* etc. Sound authority and clear logic decree that although varying state wrongful death statutes require the action to be brought in the name of the personal representative, it is prosecuted by the administrator, executor or trustee in point of form only—it actually being in favor of the surviving beneficiary who

is the real party in interest. 25 C.J.S. Death § 33, 16 Am.Jur., Death, § 266; cf. Vaughn's Adm'r v. Louisville & N. R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060, 1065; Chicago, R. I. & P. R. Co. v. Schendel, 270 U.S. 611, 46 S. Ct. 420, 70 L.Ed. 757, 53 A.L.R. 1265, 1272. The same rule obtains in death actions under F.E.L.A. See Schendel v. Chicago, M. & St. P. Ry. Co., 168 Minn. 152, 210 N.W. 70, at page 72 where this pronouncement appears: "The cause of action for the wrongful death of Baker is given by the (F)ederal Employers' Liability Act to the use of his dependents. It is not given to his estate. It is transitory. * * * The act vests in the administrator a mere naked power to enforce the claim for the sole benefit of Baker's widow and son." And, in Minnesota, the recovery in an action under the wrongful death act forms no part of the estate of the decedent but belongs exclusively to the next of kin designated by the statute. Turner v. Minneapolis St. Ry. Co., 153 Minn. 509, 190 N.W. 986.

In addition to the common feature noted, the measurement of damages under the two statutes is the same. The only real difference lies in the extent or limit of liability, fixed by the Minnesota act, with no limitation thereon under F.E.L.A., and the effect of contributory negligence, which bars recovery under Minnesota law, but only mitigates the damages under F.E.L.A. It has been conclusively determined in Minnesota that the difference in the applicable law of liability of a common carrier by railroad and one operating otherwise is not of sufficient force to destroy "common liability" as applied to indemnity and contribution actions. See Lawrence v. Great Northern Ry. Co., D.C., 98 F.Supp. 746; D.C., 109 F.Supp. 552, affirmed, Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F. 2d 408, 37 A.L.R.2d 1399. We readily recognize that Lawrence is somewhat dissimilar in that the main action was for personal injuries with liability against the railway company based upon

F.E.L.A., whereas the common law of Minnesota applied as to negligence of the third party defendant; and the ancillary action (Waylander-Peterson Co. v. Great Northern Ry. Co.) was for indemnity instead of contribution, but those distinctions make the teachings in that case no less controlling here. For, as was so ably demonstrated by the trial court there, 98 F.Supp. 746, indemnity and contribution proceedings differ not at all in respect to origin, nature or quality of the liability, but only as to the measure of it. The thing that gives rise to liability in either case is that both parties were subject originally to a *common liability,* and one has taken more than his just share of the money burden. Since, as we have seen, the real party in interest in a death action under either F.E.L.A., or the Minnesota death statute is the same, the fact that Lawrence had its origin in personal injuries is of no substantial significance.

Appellant also argues that the right of contribution cannot exist in this case because the payment made by Northern Pacific was voluntary in nature. The contention in this regard is two-fold. First, it is said that the only claim asserted against Northern Pacific was by Hulda C. Ryen, as Special Administratrix of the estate of her deceased husband, that claim being based on the F.E.L.A. Next, that any payment made by Northern Pacific to a trustee appointed under the Minnesota Wrongful Death Act was without legal compulsion and therefore voluntary. It is our view that the grounds upon which this contention is based, being tied in closely with the claim of no common liability, are lacking in merit for the same reasons heretofore advanced in disposing of the principal point.

■ The general rule is that before there can be contribution it must be demonstrated that the payment made by the one seeking such relief was not voluntary, 13 Am.Jur. Contribution, § 12; 18 C.J.S. Contribution § 4, p. 8; however, the payment must be compulsory only in the sense that the party paying was under legal obligation to do so. Ankeny v. Moffett, 37 Minn. 109, 33 N.W. 320; Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N.W. 766, and it is not necessary that the claim be reduced to judgment before the party paying is entitled to contribution, Duluth, M. & N. Ry. Co. v. McCarthy, supra.

■ We do not regard the failure of Mrs. Ryen to make formal claim by way of suit against Zontelli, through a representative designated by the Minnesota statute, as decisive of the immediate question. There being common liability, the widow, through proper statutory representatives, had a cause of action against both of the contesting parties herein, and her failure to assert formal claim against one did not destroy the right of the other who made full payment to recover by way of contribution.

As to the second ground, it will be recalled that prior to consummation of the settlement between plaintiff and Northern Pacific in the main action, Mrs. Ryen was appointed as trustee of the heirs of the decedent's estate; that thereafter payment was made to and release taken from, both the special administratrix and trustee. We entertain doubts as to whether the appointment of a trustee was an essential step in order to permit Northern Pacific to seek contribution; however, since it is unnecessary to do so, we refrain from deciding the question. As we have already emphasized, Mrs. Ryen, the widow, was the real party in interest—the special administratrix and trustee were but nominal or formal parties, and may be regarded as mere conduits through which the money passed to the beneficiary. Northern Pacific and Zontelli were liable, not to the personal representative or trustee respectively, but to the person they represented. The amount of the settlement must be regarded as having been paid for the benefit of that person, and as a result of the legal compulsion under which Northern Pacific found itself.

Working from the foregoing premise, that a common liability did exist so as

to give a right to contribution, we next come to the question of what portion of the $42,500 should equitably be paid by Zontelli.

■ Zontelli claims it was error for the Court to instruct the jury that a verdict for Northern Pacific should be given for one-half of such sum as was a fair settlement, in no event exceeding the sum of $21,250, or one-half of the actual settlement figure; that inasmuch as Zontelli's maximum liability under the Wrongful Death Act in effect in September, 1956, was $17,500, any recovery against it should be limited by that figure. Northern Pacific justifies the awarding of $21,250 by contending that the statutory limit has no application in the separate contribution action between Northern Pacific and Zontelli. Northern Pacific further points out that the Minnesota Wrongful Death Act was amended subsequent to the death of Ryen and institution of suit by the widow against Northern Pacific, whereby limit to recoveries for wrongful death was increased to $25,000, 37 Minn.Stat.Anno. § 573.02, subd. 1 (as amended April 26, 1957, Laws 1957, c. 712, § 1). It is therefore suggested by Northern Pacific that, if the statute is to limit Zontelli's liability, the $25,000 figure applies because it had no right of action for contribution until the date actual payment was made in settlement of the widow's claim (May 20, 1957). Although we do not quarrel with an assertion that actual payment is a necessary condition precedent to a right to contribution, and that prior to actual payment, no statute of limitations would run against the payor, it is clear from Minnesota decisions that the common liability underlying a right to contribution arises and is tested as of the time of the tortious acts of the parties. Employers Mutual Casualty Co. v. Chicago, St. P., M. & O. Ry. Co., 235 Minn. 304, 50 N.W.2d 689, 693; American Automobile Ins. Co. v. Molling, 239 Minn. 74, 57 N.W.2d 847, 852. As stated in 13 Am.Jur. Contribution § 7: "The courts speak of the right to contribution as inchoate or subordinate from the time

of the creation of the relationship giving rise to the common burden until the time of payment by a co-obligor of more than his proportional share." See also, Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086 (cause of action "accrues" at time of payment); 13 Am.Jur. Contribution §§ 55, 56; 18 C.J.S. Contribution § 4.

■■ It is clear that the Minnesota wrongful death limitation in effect at Ryen's death governs here, and we hold that the limit of Zontelli's liability for contribution is fixed at that sum; i. e., $17,500. In arriving at this conclusion, it is our view that Northern Pacific's contention that the contribution action is an entirely separate proceeding, unrelated to any limitations of the Wrongful Death Act, overlooks the decisional law of Minnesota, holding that it is *common liability,* not *common tortious conduct,* which gives a right to contribution. See Koenigs v. Travis, 246 Minn. 466, 75 N.W.2d 478, 486: "This court cannot change the fundamental requirements of the action of contribution to allow recovery on the basis of the joint tortious conduct rather than on the basis of 'common liability' * * *"; American Automobile Ins. Co. v. Molling, 239 Minn. 74, 57 N.W.2d 847, 854: "As emphasized previously, by the very nature of the action of contribution, the right of a party to recover in this action is dependent upon the existence of a certain relationship between defendant to this action and a third party, viz., liability. *In this sense, the action of contribution is not an independent action but is derived from and dependent upon the separate liability of defendant to the injured party.*" (Emphasis supplied.) Northern Pacific would use the wrongful death statute as the necessary base for finding a common liability, and would then disregard its limitations in arriving at the share to be contributed by Zontelli. Absent the statute, no common law action would lie for wrongful death, and thus, without the statute, Zontelli, not being liable to plaintiff, would not be liable to Northern Pacific for any amount in con-

tribution. Here the Court's instruction was based solely on *common negligence*, and by instructing, in effect, that Zontelli would be liable up to one-half of any reasonable payment made by Northern Pacific, whatever its amount, the Court overlooked the measure and extent of common liability. It seems very clear to us that any amount adjudged against Zontelli beyond the limits set by the wrongful death act would to that extent lack justification by way of a basis in common liability to plaintiff.

Zontelli further argues that the judgment should be reduced to $8,750, or one-half of the wrongful death statutory limitation under which it is liable—that Northern Pacific must, in effect, contribute one-half of Zontelli's liability under the statute. A short answer to this argument for "reverse contribution" lies in a consideration that contribution is essentially an equitable proceeding—and to seek equitable relief, the one seeking contribution must show that he has paid more than a fair share of the total loss. A somewhat analogous situation was dealt with by a Minnesota court in Employers Mutual Casualty Co. v. Chicago, St. P. M. & O. Ry. Co., 235 Minn. 304, 50 N.W.2d 689, where one joint tort-feasor refused to share plaintiff's offered settlement of $12,000. Thereupon, the other, a railroad company, "bought" a covenant not to sue for the sum of $6,000. After settlement by the remaining tort-feasor, it sought contribution from the railroad as to the $5,000 paid by it for settlement and release. The Court, in denying contribution, looked directly to the equitable nature of the action, observing at page 693: "It does not follow, however, that the general right to seek contribution is equivalent to a right to recover contribution in every case. In the instant case, it would seem that plaintiff has a right to recover by way of contribution only if it has paid more than its fair share of the loss caused by the joint tortious acts of its insured and defendant." Here, the jury determined that both parties were negligent and that $42,500 was a fair settlement. With the maximum recovery against Zontelli limited by statute to $17,500, it is apparent that Northern Pacific must bear a loss of $25,000. Under these facts, can Zontelli complain that it has paid more than its fair share? Although Zontelli cannot legally be liable beyond the limits of the statute creating its liability, fairly and equitably, it is liable *to* that extent.

In accordance with the power conferred upon us by Title 28 U.S.C.A. § 2106, 62 Stat. 963, the judgment of the trial court is reduced from $21,250 to $17,500, with interest on the latter amount from January 10, 1958, and, as *so modified, the judgment is affirmed.*